At this time, we'll hear Vitti v. Macy's. Good morning. Good morning, your honors. I feel like I'm yelling. I hope I'm not. Good morning, your honors. If your honors are approved, I'd like to reserve two minutes for rebuttal. Thank you so much. My name is Laurie Morrison, may it please the court. I represent the appellant plaintiff, Angela Vitti. Defendants knew that Ms. Vitti was disabled and that she requested accommodations that were medically required. Defendants first accommodated Ms. Vitti for the first eight months of her employment and then they abruptly stopped after Ms. Vitti had a medical leave, after she made a three-page written complaint, and after she renewed her accommodation request. My impression is that before she went out on medical leave, she was not scheduled to work on Wednesdays, which is the day that she had her physical therapy. Well, yes, your honor. But in addition to that, the court, on summary judgment, the district court erred mainly in crediting solely defendants' accounts, which is belied by the record, and this is a perfect example. Yes, Ms. Vitti was not given Wednesdays, but Ms. Vitti also requested the medically required accommodation of being off on days other than Wednesdays for medical management and medical treatment. So it wasn't just Wednesdays that was plaintiff's accommodation request, it was also days other than Wednesdays. And this brings us to a key point. Defendants' demerit point system didn't just give plaintiff negative points because of Wednesdays, it also gave plaintiff demerits for medically required absences that occurred on days other than Wednesdays. And those demerits led to plaintiff's firing. For instance... What's your non-hearsay evidence that she was suffering from a disability at all? Well, plaintiff states that she suffered inability to... No, but this is summary judgment. I'm talking about her testimony... Oh, I see. Yes, what she testified to. She testified to this, Your Honors. But as well, we have the medical records. The court claimed that they were unsworn. Actually, they were sworn. They were certified. In addition, we have the leave of absence documents which state agoraphobia. They state panic attacks. They state several things. They also state inability to socialize. I'm sorry, because there was this assertion by your adversary that the medical... the doctor's letter or whatever it was was unsworn and you say it was sworn. Is that anywhere in the record here? Is there some place in the appendix or something where that is shown? Your Honor, what I was saying is that the doctor's notes... This is not the... I'm saying separate from the leave of absence papers. The doctor's notes from Steinway Family Services which shows absences on Wednesdays and days other than Wednesdays, those documents were included in hundreds of pages of medical documents that were certified. The certifications are not part of the record here, but they were produced by defendants. Further... Counsel? Let's assume, arguendo, that you have made a prima facie case. Where do you at all significantly traverse the explanation that was given and give enough evidence that this was pretextual to get by a judgment against you? Thank you, Your Honor. Defendant's point system simply said if you remove the March 10, 2013 hospitalization that was an emergency hospitalization for hypertension. Hypertension is one of the disabilities that plaintiff requests an accommodation for. That's in the leave of absence papers. That's in plaintiff's legally protected complaints. Especially the written complaint, which defendants cannot argue that they did not receive. If you remove that March 10 absence, plaintiff did not have enough absences to be given a warning and certainly not to be fired. We can see that emergency hospitalization for March 10 and March 11. March 10 is a Sunday, March 11 is a Monday, again showing absences medically required that were not on Wednesdays. That's A345 through A56. Plaintiff also had a doctor's appointment on April 3, 2013 and was fired the next day at A109. As I recall, when your client was given an opportunity to go around lunchtime for physical therapy, your client would unpredictably take off the rest of the day. That seems to be in the record. Where that leads to is if for whatever reason, including disability, you can't regularly show up for work, then you're not qualified for the job. Somebody has to be manning that counter. Of course, but keeping in mind, Your Honor, this was Macy's and Clinique. There were several employees there. Thank you, Your Honor. Defendants were able to accommodate plaintiff. They do not claim any reasonable hardship. So plaintiff was able to do her job and plaintiff was not able to work the entire days on Wednesdays as plaintiff testified to because she was dealing with very significant stress during those therapy sessions on Wednesdays. She could not have returned back to work. In addition, if Your Honors look at A165, which is defendant's point system, they marked her absent and gave her demerits on several days other than Wednesdays that were medically required absences. The hospitalization we mentioned. There's also doctor's notes showing that plaintiff had to see her doctors for medical management and otherwise. These medical accommodations were requested in the leave of absence. But in addition, defendants claim that plaintiff her leave of absence documents never reached the people in the field who made the decision. Well, plaintiff's three-page written complaint did. And that three-page written complaint details not only plaintiff's disabilities, but that she was on medications, that people saw her on medications and that she was told to complain and that she was told to hire a lawyer. Now, the court claimed that this somehow isn't protected activity. Well, if this isn't protected activity, then we're hard-pressed to find any activity that's protected. So that's a basis, of course, for not only retaliation, but it also undermines defendants' claims that people within the field who made the decision did not know about plaintiff's disabilities and her complaints because her legally protected written complaint was given to the people in the field. In addition, the court bases erroneously, we believe, on defendants' claims, which are not backed up by the record, that somehow because of plaintiff's absences that, again, were medically required, including her hospitalization on March 10th, that's a basis that she wasn't qualified. Well, if we're going to base medically required absences on her not being qualified, then we're eviscerating the amended ADA to begin with. The ADA was not meant to eliminate trigger coverage. It was meant to expand it. But importantly, again, back to Your Honor's questions about was she able to do her job, well, we see if you remove her hospitalization on March 10th, she didn't even warrant a final warning. We'll take that up with your adversary. You've reserved a couple minutes for rebuttal, and we'll hear you then. Thank you, Your Honor. May it please the Court, Your Honors. My name is Todd Gershon. I'm with the law firm of Jackson Lewis. We represent the appellee, Clinique, in this matter, and we request that the Court affirm the district court's decision granting summary judgment and dismissing Clinique from this case as a joint employer. Throughout the course of this case, the appellant has attempted to conflate Macy's and Clinique. We'll certainly defer Macy's points to their counsel. It's clear from the undisputed record evidence that Clinique had no knowledge of any disability at any time, never received a shred of medical documentation. Was the Clinique counter a concession within the larger store? No. The undisputed evidence shows that there was only a business relationship between Clinique and Macy's, and at all times Clinique was a vendor. It sold its products to Macy's, and Macy's from there then went and sold the products and had full control to do that. Clinique was not selling its own products on its own account. It was selling the products that it had sold. It was promoting the products that it had already sold to Macy's. There was cooperation as any normal business relationship between a vendor and a department store, and so the fact that Clinique just sold its products to Macy's, it provided support to Macy's with respect to sales and marketing, but that was it. It did not control the labor relations of its employees. At all times, Ms. Vitti was an employee of Macy's, and as such, Clinique cannot be held liable as a joint employer because there's insufficient record evidence that it exercised immediate control over the terms and conditions of her employment. The Second Circuit has primarily utilized the seven-factor test when analyzing the joint employer issue, and none of those factors exist in this case. The factors are hiring, firing, discipline, pay, providing insurance, maintaining records, and supervision. In the time that I have, I'll go through those items. There's no record evidence that Clinique had immediate control over Macy's decision to hire Ms. Vitti. The record's clear that Clinique only meets with employees Macy's assigns to work with Clinique as a courtesy, and they only do that after Macy's makes the decision to hire. The record evidence shows that Clinique does not have veto power with respect to Macy's hiring decisions or on Macy's assignment of any of its employees to work at a Clinique counter. Also, during the pre-employment period, there's no record evidence that the timing of any conversations that Ms. Vitti had with any alleged Clinique employee was prior to the time that Macy's made the decision to hire her, and, in fact, Ms. Vitti admitted that she had no knowledge... Was there a question, Your Honor? Actually, yes. Is there any evidence whatever that any Clinique employee did any of the things that plaintiff claims discriminated against her? No. There's no record evidence that would support that, and, in fact, Ms. Vitti admitted at deposition that she had no knowledge whether a Clinique employee made any employment decision about her, and, in fact, plaintiff speculation throughout in terms of what Clinique may or may not have done does not create a genuine issue of material fact. There's no record evidence that Clinique was a joint employer. With respect to the hiring factor, Clinique did not participate in Macy's decision to terminate Ms. Vitti, and Ms. Vitti fails to produce any evidence to support that. The undisputed record evidence shows that Clinique did not even know that Macy's had terminated Ms. Vitti's employment until they received the judicial complaint in this action. It's undisputed that Clinique did not provide insurance to Ms. Vitti, did not maintain a single employment record with respect to Ms. Vitti, did not supervise her, did not subject her to discipline. As to pay, it's undisputed that Ms. Vitti acknowledged that Clinique did not pay her. Macy's paid her her pay in an attempt to try to argue that Clinique offered her something of value because she got free Clinique products as a gratis. The Second Circuit has held in Clinton's ditch that the minimum benefits are insufficient to support a joint employer relationship. The financial benefit must be more substantial, as Your Honor observed in the P.A. Trust case, something that's lacking in this case. So, just because she worked at a Clinique counter, just because somebody at Macy's Center for Training, at their decision, just because she received a professional image standards guideline does not add up to a joint employer relationship and for these reasons, we respectfully request that the Court affirm the District Court's decision and grant summary judgment and dismiss Clinique from the action. Thank you. We'll hear from Macy's. Morning. Morning. May it please the Court, my name is Lateek Lyles and I represent Macy's. The evidence before this Court is overwhelming that Plaintiff was terminated solely because of her chronic absenteeism and tardiness. After a careful review of the admissible evidence, the District Court correctly decided that Plaintiff was not disabled, that she was lawfully discharged, that she never presented a request for a reasonable accommodation or engaged in protected activity, and that she was not subjected to a hostile work environment. Isn't she asking for Wednesdays off in order to go to physical therapy and I'm not sure that's an accommodation, but I think that's what she's characterizing as an accommodation and I think she asked for it. Yes, so the record reflects that when Plaintiff was first hired at Macy's, she asked for Wednesdays off for a standing therapy appointment. Based on Plaintiff's own deposition testimony, she never told anyone the nature of this therapy appointment because, in her words, it was none of their business. So no one at any point ever knew that the nature of this therapy appointment was medical. Now, after Plaintiff returned from a leave of absence in early 2013, she was informed that Macy's had eliminated scheduling preferences for anyone for everybody nationwide unless they can present evidence or documentation that it was medically necessary or for a religious reason. She was instructed at that time to provide that documentation. The record is clear that Macy's at any point never received any documentation from the Plaintiff that she was medically required to have these Wednesdays off. Now, your adversaries argued that after the Plaintiff returned from medical leave, Macy's did implement this new policy and it's not specific to this Plaintiff or even this store, but it set up a point system for determining whether... for determining compliance with various things, including timely arrival and lateness. And your adversary is arguing that looking at that, she never racked up the number of demerits that would justify discharging her. That is not at all reflected in the record, Your Honor. In fact, the point system was in place before she went on leave of absence and then it was also in place still after she went on leave of absence. During the short six-month time frame that Plaintiff worked for Macy's part-time, she accumulated 25 attendance points for 15 absences and tardies. Plaintiff is now asserting for the very first time on appeal that, and let me go back for a second and point out that none of these points were accumulated for any Wednesdays. So even after Plaintiff got back and she was scheduled to work on Wednesdays, the record is clear that she never worked on Wednesdays and that she was never assessed any points for that. That's because she had Wednesdays off. I mean, that was one of her days off. Is that correct? Not after she came back from her leave of absence. She was scheduled to work on Wednesdays, but she never came to work on Wednesdays and she was never assessed any points for that because she had informed her supervisors of this appointment. They said, look, please provide the documentation. But in the meantime, she was not assessed any points. Now, the Plaintiff is asserting for the very first time on appeal that the 25 points that she did accrue were for medical appointments. This particular fact was never argued in the lower court, not to mention Plaintiff Macy's in our statement of undisputed facts specifically stated that none of the absences that Plaintiff accrued were for medical issues and Plaintiff did not dispute this in our statement of undisputed facts. This is in the record. But it's undisputed that it was for therapy, but what other kind of therapy would we be talking about other than medical, with a medical professional? Well, there's no evidence that any of the absences that she accrued were for anything medically necessary, with the exception of... Go right ahead. I'm sorry. Was there a question, Your Honor? Okay. There was... Okay. It is undisputed that of the 15 absences and tardies that Plaintiff accrued, there is no evidence on the record that any of those absences or tardies were because of anything medically necessary. Plaintiff now points to one particular medical record, which is inadmissible, as Your Honor has pointed out, and as you did correctly point out, there are no sworn doctor's notes that are on this record. But looking even at that one particular medical record, that only excuses one of the 15 absences and tardies that Plaintiff received. It's very clear from the record that she has not accrued, or she did not present any evidence that any of the other absences and tardies were medically necessary. Notwithstanding, Your Honor... You say that in answer to the question I asked the opposing counsel about whether she traversed any of the evidence that your actions were not pretextual, her answer is plain and simply, no, not before the lower court, and not in anything that was sworn. Am I correct? That is absolutely correct, Your Honor. There is no evidence before the lower court and nothing before this record that Macy's disciplined Plaintiff for any reason other than the fact that she was chronically absent and chronically tardy for issues that were completely unrelated to her absence, to her medical issues. And for those reasons, Your Honor, I ask that the court affirm the district court's decision to grant motion for summary judgment in favor of Macy's. Thank you. Well, here we're a little. Thank you, Your Honors. First, let's discuss Macy's claims. The claim that there's no evidence on the record that the lower court looked at to show that Plaintiff was given demerits for medically related reasons, that's absolutely not correct according to the record. If Your Honors see, for example, as we mentioned before, we have the hypertension emergency hospitalization. That's March 10th. Hypertension was included in the leave of absence. If Your Honors also, a key thing to look at is document A-165. Those are showing several absences. For instance, in November, Plaintiff accrued six points, while in the month of November, according to the record that the district court had, Plaintiff was on leave. She was on leave from October 29th, 2012, to January 2nd, 2013. So she received six points, according to demerit system, while she was on a medical leave of absence. We also have, before the court, that the lower court was able to see the hospitalization. We also have that she received demerits in March for absences that were on Wednesdays. Well, I mean, you can certainly quarrel with individual entries of these kinds, but I understood your adversary to be arguing that there was an overwhelming and intolerable number of absences and latenesses, and it's pretty hard to run a business when you have no idea whether a particular employee is going to show up or when. Well, actually, Your Honor, what the adversary is claiming is not, is belied by the record. By defendant's own claims, they claim, Macy's is claiming in their brief, page 20 of 69, a lateness, you get one point, absence, three points. And that A-113. After a final warning accrues after nine or more points in any rolling 90-day period within one year of the issuance of the first warning, A-113 through 114, paragraph 10. Now, defendants claim that after the first warning was given on March 5, 2013, A-115 is the document, and after the first warning, Macy's does not claim an overwhelming amount of absences and tardiness. They specifically say, and I quote, that plaintiff accrued ten more points once they removed the Wednesdays. Absent three more times. March 10th, which again was the hospitalization. March 23rd, March 26th, and one lateness on March 22nd. So she accrued only ten more points. If you subtract the March 10th, which removes three points, she only accrued seven points. So she didn't, she shouldn't have gotten the final warning to begin with. Never mind. And if I may, I'm sorry. Yeah, on a totally different subject. Are you still maintaining that Clinique should be in this case? Thank you, Your Honor. I was going to move on to that. Yes, Your Honor. And here is why. Defendants claim that plaintiff never said that Clinique had anything to do with her hiring. Well, no. Plaintiff testified in her deposition and it's cited in Plaintiff's 56.1 counterstatement, A217 and A218, that plaintiff interviewed with both Macy's and Clinique and that Esther Chee told plaintiff that her hiring depended on whether or not she passed her interview with Clinique. Who told her that? Esther Chee, who was a Macy's employee. So why Esther Clinique? Why isn't that hearsay? Well, Your Honor, what plaintiff is, well, Esther Chee is going to be, if we go to trial, and we hope that we are able to, we hope that... Your Honor, this is summary judgment. The rules of evidence still apply. And the only evidence, at least the only evidence you just referred to, is so far as Clinique is concerned, hearsay, is it not? Actually, Your Honor, plaintiff also testified that she spoke with the Clinique person and after that interview... What did the Clinique person say? Well, she said the Clinique person interviewed her, but that she spoke to a Clinique person and after that she received a job. Plaintiff also asserts, and it's in plaintiff's appellate brief and it was before the court on summary judgment, that plaintiff started receiving much of the negative treatment, the hostile work environment, after she had to miss one of Clinique's several training sessions. And she claims that both the Clinique executive who taught those sessions and Macy's people were harassing her because she had to miss Clinique training sessions because of a medically required doctor's appointment. So we have several instances where plaintiff testifies that Clinique was directly involved in her hiring, in her discrimination, in her harassment, and her retaliation. In plaintiff's three-page written complaints, she also discusses... Oh, she also discusses that she received further harassment and firing because she missed a Clinique training session. Now, Clinique... And if I can just... We're done. Thank you all. We'll reserve decision.